# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

CLEVELAND D. DUNN,

     Plaintiff,

v.

CIVIL ACTION NO.: CV513-131

DARRELL HART, Warden, Ware
State Prison; BARBARA J. MOORE,
LPN, Ware State Prison; MARY GAIL
FERRA, NP, Ware State Prison;
H. VAUGHN, Director of Nursing,
Ware State Prison; LARRY EDWARDS,
Physician's Assistant, Calhoun State
Prison; BRIAN OWENS, Commissioner;
and THOMAS E. SITTNICK,Director
of Health Services, Georgia
Department of Corrections,

     Defendants.

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

     Plaintiff, who is currently incarcerated at Baldwin State Prison in Milledgeville, Georgia, filed a cause of action, through counsel, pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while he was housed at Ware State Prison in Waycross, Georgia, and at Calhoun State Prison in Morgan, Georgia. Defendants filed a Motion to Dismiss. Plaintiff filed a Response, and Defendants filed a Reply. The undersigned issued a Report and recommended that Defendants' Motion be granted because Plaintiff failed to exhaust his administrative remedies. Plaintiff filed

Objections to the undersigned's Report and Recommendation and, based on these Objections, the undersigned directed the parties to submit further information. Based on the parties' responses to the undersigned's Order and a further review of the evidence before the Court, the undersigned **VACATES** his original Report and Recommendation and issues the following in its stead. For the reasons which follow, Defendants' Motion should be **GRANTED** in part and **DENIED** in part.

## STATEMENT OF THE CASE

Plaintiff contends that he was attacked by another inmate, and an unknown correctional officer was not at his assigned duty post at the time. Plaintiff also contends that Lieutenant Adams: found him after this attack; took pictures of Plaintiff's injuries; was aware of Plaintiff's pre-existing condition of hydrocephalus; and took Plaintiff to the medical unit. Plaintiff asserts that Defendant Moore questioned him after the attack, cleaned the blood off Plaintiff, gave him Tylenol and ice, and advised Plaintiff to come back to the medical unit if he had any problems. Plaintiff contends that Defendant Moore denied his request to be taken somewhere for emergency care, even after she was informed that Plaintiff suffers from hydrocephalus and was scheduled for surgery. Plaintiff alleges that Defendant Ferra informed him that Defendant Moore's recommended course of treatment was sufficient. Plaintiff avers that Defendant Hart saw his injuries, and Plaintiff expressed concern over the severity of his injuries. Plaintiff asserts that Defendant Hart failed to pursue any option which would allow Plaintiff to be properly treated. Plaintiff also asserts that Defendant Edwards (Calhoun State Prison) refused to send him for immediate medical assistance upon Plaintiff's arrival at this Prison. Plaintiff contends that he had x-rays and a CT scan performed more than two

2

(2) weeks after the attack, and these images revealed that he had multiple facial fractures which had healed improperly. Plaintiff asserts that Defendant Vaughn, the head of nursing, was responsible for the training and supervision of medical personnel and failed to provide Plaintiff with proper medical treatment.[1] Plaintiff also asserts that Defendant Sittnick with the Office of Health Services is responsible for the implemented policies for healthcare and the oversight of medical care providers. Finally, Plaintiff asserts that Defendant Owens, the Commissioner, is responsible for the policies and procedures in place which require approval for certain medical treatments, causing a delay in treatment.

Defendants contend that Plaintiff failed to exhaust his administrative remedies prior to filing this cause of action. Defendants also contend that Plaintiff's claims are barred by the applicable statute of limitations period. Defendants allege that Plaintiff fails to set forth a plausible Eighth Amendment claim. Defendants contend that they are entitled to qualified immunity.

---

[1] Defendants correctly note that the undersigned failed to either recommend the dismissal of Plaintiff's claims against Defendant Vaughn or sanction the service of Plaintiff's Complaint upon Defendant Vaughn. As this sentence represents the entirety of Plaintiff's claims against Defendant Vaughn, Defendant Vaughn should be dismissed as a named Defendant. A plaintiff must set forth "a short and plain statement of the claim showing that [he] is entitled to relief." FED. R. CIV. P. 8(a)(2). In section 1983 actions, liability must be based on something more than a theory of respondeat superior. Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. It appears that Plaintiff seeks to hold Defendant Vaughn liable based on her position as head of nursing, as he makes no factual allegations against Defendant Vaughn. Plaintiff's claims against Defendant Vaughn should be **DISMISSED**.

AO 72A
(Rev. 8/82)

## DISCUSSION AND CITATION TO AUTHORITY

### I. Exhaustion

#### A. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

#### B. Whether Plaintiff exhausted his administrative remedies

Defendants contend that Plaintiff did not properly exhaust his administrative remedies on most of his claims prior to the filing of this cause of action. Defendants assert that Plaintiff filed Informal Grievance 99010 on September 27, 2011, and this grievance is only timely as to events which allegedly occurred on or after September 17, 2011. Defendants contend that Plaintiff's claims of misconduct against all Defendants except Defendant Edwards should be dismissed because Plaintiff's grievance was filed untimely. However, as to his claims against Defendants Edwards, Hart, and Owens, Defendants assert Plaintiff did not exhaust his administrative remedies because he did not file a grievance concerning his claims against these Defendants.

4

Plaintiff contends that he filed his grievance on September 19, 2011, which was within the ten (10) days allowed under the applicable Standard Operating Procedure. Plaintiff contends that he submitted his appeal of the denial of his formal grievance on December 8, 2011, and he did not file this cause of action until after he was to receive the response to this appeal on March 8, 2012. Plaintiff asserts that his grievance concerned his beating, resulting injuries, and the inability to receive adequate medical treatment. Plaintiff also contends that the assertions he raised in his grievance "sufficiently implicated" Defendants and their liability. (Doc. No. 40, p. 6).

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1097 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative

AO 72A
(Rev. 8/82)

remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

Standard Operating Procedure ("SOP") IIB05-0001 sets forth the three (3) steps an inmate had to complete under the Georgia Department of Corrections' grievance procedure in effect at the time this cause of action began.[2] First, an inmate had to file an informal grievance "no later than 10 calendar days from the date" the inmate was aware "of the facts giving rise to the grievance." (Doc. No. 27-5, p. 6). An inmate was to be given a written response to his informal grievance within ten (10) calendar days of the counselor's receipt of the inmate's informal grievance. (Id. at p. 7). If the inmate was dissatisfied with the resolution of his informal grievance, he was to file a formal grievance within five (5) days of his receipt of the written resolution of his informal grievance. (Id.). Once an inmate received the Warden's response to his formal

---

[2] This SOP was amended with an effective date of December 10, 2012, and inmates are no longer required to file an informal grievance. (SOP IIB05-0001, p. 4) (Dec. 2012). The previous version of this SOP is relevant for this Court's purposes.

AO 72A
(Rev. 8/82)

grievance and was dissatisfied with that response, he had five (5) business days to file an appeal with the Commissioner. (Id. at p. 9). The Commissioner's Office had 90 calendar days after receipt of the appeal to respond. (Id. at p. 10).

Plaintiff signed and dated Informal Grievance Number 99010 on September 26, 2011, and stated that he was "brutally beaten" and received "multiple head/face injuries, chronic brain illness and injuries" on September 9, 2011. (Doc. No. 27-6, p. 2). Plaintiff also stated that he required x-rays and treatment at Augusta State Medical Prison immediately, yet he was transferred to Calhoun State Prison and was unable to "maintain" in general population. (Id.). Plaintiff received a response to this informal grievance which stated that he was seen in medical then placed in administrative segregation. Plaintiff was also informed that transfers are not a medical issue. (Id.).

Plaintiff signed Formal Grievance Number 99010 on October 25, 2011. In addition to recounting the alleged events of September 9, 2011, Plaintiff stated that he was not treated for his injuries at Ware State Prison and was transferred to Calhoun State Prison. Plaintiff also stated that the medical staff at Augusta State Medical Prison ordered reconstructive surgery for his face and head on October 24, 2011. (Doc. No. 27-7, p. 2). The Warden (or his designee) responded to this grievance and informed Plaintiff that he received medical treatment after his attack and that staff followed proper procedures. Pam Smith, an employee with the counselor's office at Ware State Prison, declares that she sent a memorandum explaining the grievance package to the Grievance Coordinator at Calhoun State Prison on December 2, 2011.[3] (Doc. No. 56-2,

---

[3] An inmate who has been transferred to another prison must file a grievance at his current place of incarceration, and his grievance will be forwarded to the appropriate prison for resolution. (Doc. No. 27-2, p. 4).

AO 72A
(Rev. 8/82)

p. 3). Plaintiff received this response on December 7, 2011. (Doc. No. 27-7, p. 2; Doc. No. 40-1, p. 2).

Plaintiff submitted his final appeal on December 8, 2011, and it was received by Alexander Jordan, who is a counselor at Calhoun State Prison. (Doc. No. 56-1, p. 5). Jordan declares that he has no independent memory of Plaintiff's filing, but his practice is to process the appeal by providing a copy of the grievance to the inmate and then forwarding it to the deputy warden for processing. (Doc. No. 56-1, p. 3). Pam Smith declared that the package sent to Plaintiff never arrived at the counselor's office at Ware State Prison so that the appeal process could be initiated and forwarded to the Commissioner's office. (Doc. No. 56-2, p. 3). Instead, Smith states that "an unexplained copy" of Plaintiff's informal grievance arrived at Ware State Prison from Calhoun State Prison on December 19, 2011. (Id.). Smith also states that this grievance was rejected for not having the informal grievance attached and "was used to officially close grievance #99010." (Id. at p. 4). Smith further states that Plaintiff acknowledged receipt of this rejection on December 22, 2011, which is indicated by his signature. (Id.).

Assuming without deciding that Plaintiff set forth sufficient information in his informal and formal grievances so that all remaining Defendants were put on notice of Plaintiff's claims against them, the Court must determine whether Plaintiff properly exhausted his administrative remedies prior to the filing of his cause of action. In making this determination, the Court must consider Plaintiff's version of the facts regarding exhaustion. Under Plaintiff's version of events regarding exhaustion, Plaintiff filed an appeal of the denial of his formal grievance on December 8, 2011, and he did

not receive a response on that appeal within the 90 days allotted for response under the SOP, which would have been on or before March 8, 2012. In fact, Plaintiff asserts that he had not received a response at the time he filed his Complaint on December 19, 2013. (Doc. No. 40, pp. 3–4). The parties' contentions regarding Plaintiff's exhaustion create a dispute, which the Court must resolve by examining the evidence outside of the pleadings.[4]

The evidence before the Court reveals that Plaintiff signed Informal Grievance Number 99010 on September 26, 2011, (doc. no. 27-6, p. 2), and he filed a formal grievance after the denial of the informal grievance, based on the actual contentions Plaintiff set forth in this grievance, on October 25, 2011. (Doc. No. 27-7, p. 2). Plaintiff received the response on December 7, 2011. (Id.). The Court notes Plaintiff's contention that he filed an appeal of the denial of his formal grievance. The documentation before the Court indicates that Alexander Jordan received this appeal on December 8, 2011. (Doc. No. 56-1, p. 5). While Jordan declared that he has no specific recollection of this grievance, it is his practice to sign and date the inmate's completed appeal form and then to forward the completed appeal form and remaining documentation for processing. (Doc. No. 56-1, p. 3). Under SOP IIB05-0001, an inmate wishing to file an appeal of the denial of his grievance must fill out and sign the grievance appeal form and turn it in to his counselor. It is then for the counselor to

---

[4] The Court rejects Defendants' assertion that Plaintiff did not file his informal grievance within ten (10) days of the events giving rise to this cause of action, rendering his grievance untimely and barring this cause of action on that basis. The undersigned notes that SOP IIB05-0001 provides that, "When an inmate attempts to grieve an item that . . . is out time, . . . it will be rejected, noting the specific reason for this action." (Doc. No. 27-5, p. 5) (emphasis added). If Plaintiff's informal grievance was untimely, as Defendants insist, it was to be rejected rather than denied. Instead, prison staff answered Plaintiff's informal (and formal) grievance based on the merits of his contentions. If inmates are to be bound by this SOP, so too should prison staff. Defendants raise this assertion once again in their Response to the undersigned's Order. (Doc. No. 56).

AO 72A
(Rev. 8/82)

attach the completed formal and informal grievances to the appeal form. (Doc. No. 27-5, p. 10). There is nothing before the Court refuting Plaintiff's contention that he filed an appeal, only that Smith did not receive it. Whether Plaintiff's appeal paperwork was lost from Calhoun State Prison to Ware State Prison, Jordan did not adhere to his usual practice, or there is another explanation for what happened to Plaintiff's appeal is of no moment. Rather, Plaintiff did all he was required to do to fully and properly exhaust his administrative remedies as to the Ware State Prison Defendants. There is nothing before the Court which indicates that Plaintiff failed to do what was required of him pursuant to the applicable SOP. This portion of Defendants' Motion should be **denied**.

However, Plaintiff's grievance makes no mention of Defendant Edwards or any other personnel from Calhoun State Prison or of a failure to protect claim, and these portions of Defendants' Motion should be **granted**. The entirety of Plaintiff's grievance states:

> On Sept. 9, 2011[,] I was beaten with [a] wooden mop handle multiple times in the face and stabbed in the arm at Ware S.P. I requested immediate outside medical attention because many blows were inflicted on my head, too. Lt. Adams tried to send me out, but Ware S.P. medical staff denied his request—in spite of video evidence. I was not treated but transferred to Calhoun. On October 24, 2011, A.S.M.P. medical staff ordered reconstructive surgery on my face and head.

(Doc. No. 56-1, p. 5). Plaintiff's claims against Defendant Edwards should be **dismissed**, without prejudice, because Plaintiff did not initiate the grievance process based on his claims against Defendant Edwards. Additionally, Plaintiff does not raise any failure to protect/deliberate indifference to safety claims in his grievance, nor does he make any allegation which would put Defendants on notice that Plaintiff wished to grieve about any alleged failure to protect claim. This is especially true in light of

Plaintiff's request that any Ware State Prison personnel medical staff that did not treat him be terminated. (Id.). Plaintiff's failure to protect claim should be **dismissed**, without prejudice, based on Plaintiff's failure to exhaust his administrative remedies as to this claim.

## II. Motion to Dismiss

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

AO 72A
(Rev. 8/82)

## A.    Statute of limitations

Defendants contend that all of Plaintiffs claims are barred by the applicable statute of limitations period.   Defendants assert that Plaintiff contends that: he was attacked and denied medical treatment on September 9, 2011; he was denied medical treatment on other dates in September 2011; he received a CT scan on October 17, 2011; and he was seen by outside doctors on October 24, 2011.   Defendants allege that the statute of limitations period must have accrued on October 24, 2011, at the very latest, and the limitations period expired on October 24, 2013.   Defendants also allege that Plaintiffs Complaint, which was filed on December 9, 2013, was filed untimely.

Plaintiff contends that he could not file his cause of action until after he completed the mandatory exhaustion requirements, and his Complaint was filed timely because the statute of limitations period was tolled while he completed his mandatory requirement.

"To dismiss a prisoner's complaint as time-barred . . . it must appear beyond a doubt from the complaint itself that the prisoner can prove no set of facts which would avoid a statute of limitations bar." McKenzie v. United States Dep't of Justice, Drug Enforcement Agency, 143 F. App'x 165, 168 (11th Cir. 2005) (citing Hughes v. Lott, 350 F.3d 1157, 1163 (11th Cir. 2003) (internal quotations omitted).   Constitutional claims brought pursuant to section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011).   Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33.   Although state law determines the applicable statute of limitations, "[f]ederal law determines when the

AO 72A
(Rev. 8/82)

statute of limitations begins to run." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." "The plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (alteration in original) (citation omitted). "This means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court." Id. In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). As above described, the Georgia Department of Corrections had a Standard Operating Procedure

AO 72A
(Rev. 8/82)

in place regarding the grievance process at the time giving rise to the events of Plaintiff's Complaint.

In Leal, the Eleventh Circuit "decline[d] to decide in the first instance the legal issue of whether the mandatory exhaustion requirement of 42 U.S.C. § 1997e(a) and the actual exhaustion of remedies by a prisoner will operate to toll the statute of limitations." 254 F.3d at 1280. While the undersigned recognizes that Georgia law does not permit tolling, the undersigned concludes that tolling is the proper course in this case. The applicable statute of limitations period was tolled while Plaintiff pursued his administrative remedies, which was a prerequisite to filing suit because he is imprisoned. Even though the Eleventh Circuit has not addressed this issue directly, other Courts of Appeals agree. Nickolich v. Rowe, 299 F. App'x 725, 725-26 (9th Cir. 2008) (finding that, given California's two-year statute of limitations, a state prisoner's § 1983 deliberate indifference claim was not barred by the statute of limitations, where the inmate commenced his prison grievance process immediately after his claim accrued and filed a complaint within two years of completing the mandatory grievance process); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001) (holding that a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000) (concluding that tolling is appropriate while prisoner completes mandatory exhaustion requirements); Harris v. Hegmann, 198 F.3d 153, 157-59 (5th Cir. 1999) (same); see also, Quilling v. Humphries, No. 4:10cv404-WS, 2010 WL 4783031, at *1 (N.D. Fla. Nov. 17, 2010) (referring a case back to the magistrate judge because it could not be determined that the statute of limitations

necessarily barred the plaintiff's claims); and <u>Baldwin v. Benjamin</u>, No. 5:09-CV-372(CAR), 2010 WL 1654937 (M.D. Ga. Apr. 23, 2010) (recognizing that the Eleventh Circuit has not adopted a rule regarding the effect of exhaustion on tolling, but noting that the exhaustion requirement may operate to toll the statute of limitations).

Plaintiff filed a timely appeal of the denial of his grievance on December 8, 2011. (Doc. No. 56-1, p. 5). A staff member of Ware State Prison rejected Plaintiff's informal grievance on December 19, 2011, and Plaintiff was notified of this rejection on December 22, 2011. (Doc. No. 56-4, p. 2). The Commissioner's office had 90 days from the date Plaintiff filed an appeal, or until March 7, 2012, to respond to Plaintiff's appeal. Plaintiff's completion of the mandatory exhaustion requirement tolled the two-year statute of limitations period. Using any of these dates—December 8 or 19, 2011, or March 7, 2012,—as the triggering event for the statute of limitations renders Plaintiff's Complaint filed on December 9, 2013, timely.[5] This portion of Defendants' Motion should be **denied**.

### B. Official capacity claims

Defendants assert that Plaintiff fails to indicate whether he is suing them in their individual and/or official capacities. Defendants also assert that, to the extent Plaintiff is suing them in their official capacities, such claims should be dismissed. Plaintiff mentions in passing that Defendants are being sued in their official capacities. (Doc. No. 40, p. 13).

A lawsuit against a correctional officer in his official capacity is no different from a suit against the government itself; such a defendant is immune. <u>Smith v. Fla. Dep't of</u>

---

[5] December 8, 2013, was a Sunday. The following Monday, December 9, 2013, would be the proper date to use as the expiration of the applicable statute of limitations period. FED. R. CIV. P. 6(a)(1)(C).

AO 72A
(Rev. 8/82)

Corr., 318 F. App'x 726, 728 (11th Cir. 2008) (citing Powell v. Barrett, 496 F.3d 1288, 1308 & n.27 (11th Cir. 2007)). To be clear, a "state defendant[ ] sued in [his] official capacity for monetary damages under § 1983 [is] immune from suit under the Eleventh Amendment, [but he is] not immune from claims seeking prospective declaratory or injunctive relief." Id. This portion of Defendant's Motion should be **granted**.

## C. Eighth Amendment claims

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been

AO 72A
(Rev. 8/82)

diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]" Goebert, 510 F.3d at 1327. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id.

Moreover, a difference in opinion between the prison's medical staff and the prisoner as to diagnosis or course of treatment does not amount to a claim under the Constitution. Harris v. Thigpen, 941 F.2d 1495, 1505 (citation omitted). Only when deliberate indifference to an inmate's serious medical needs is demonstrated to be "repugnant to the conscience of mankind" or offensive to "evolving standards of decency" will it give rise to a valid claim of mistreatment under the Eighth Amendment. Id.

Defendants contend that, to the extent Plaintiff may have shown that he had a serious medical need, he fails to show that Defendants Moore, Ferra, or Hart were deliberately indifferent to that serious medical need. Defendants assert that, at most,

Plaintiff alleges that Defendants Moore and Ferra may have been negligent and that he and Defendants Moore and Ferra may have had a difference of opinion as to the course of treatment he received, but these assertions do not rise to the level of establishing a constitutional violation. Defendants also allege that Defendant Hart was the warden and not a member of the medical staff and that, at most, Plaintiff's allegations against him rise to the level of negligence. Defendants further allege that Plaintiff's claims against Defendants Sittnick and Owens amount to no more than supervisory liability claims.

Plaintiff asserts that his contentions against Defendants Moore, Ferra, and Hart are not implausible and are at least sufficient to raise a reasonable expectation that discovery will reveal evidence supportive of his claims. Plaintiff asserts that these Defendants were aware of the severity of his injuries and his preexisting medical condition and the serious medical need that condition creates, and these Defendants were deliberately indifferent to his serious medical needs because they did nothing or delayed treatment to address his medical needs adequately.

Another review of Plaintiff's Complaint reveals that his deliberate indifference claims against Defendants Moore, Ferra, and Hart are at least plausible at this stage of the proceedings. For instance, Plaintiff asserts that Defendant Moore, Ferra, and Hart knew of Plaintiff's pre-existing condition, witnessed Plaintiff's injuries after the attack, and did nothing to help Plaintiff obtain constitutionally-mandated medical treatment. The undersigned notes Defendants' contentions that Plaintiff's allegations against Defendants Moore, Ferra, and Hart do not rise to the level of establishing a constitutional violation. While it may be that Plaintiff cannot overcome the higher

18

burden of proof at the summary judgment or trial stages, such is not the issue before the Court. Rather, Plaintiff's allegations must reveal enough factual detail to show that his claims are plausible, which he has done. This portion of Defendants' Motion should be **denied**.

In contrast, Plaintiff contends that Defendants Owens and Sittnick are responsible for the policies in place for Georgia penal institutions and that the policy requiring approval from the Department of Corrections for certain medical treatments and procedures constitutes deliberate indifference to Plaintiff's serious medical needs. Plaintiff makes no allegation that Defendants Owens and Sittnick were aware of Plaintiff's medical needs, serious or otherwise, or were deliberately indifferent to his serious medical needs. Instead, Plaintiff alleges that the policy requiring prison staff to obtain approval from the Department of Corrections causes Defendants Owens and Sittnick to refuse and/or delay providing necessary medical testing and treatment to inmates. This portion of Defendants' Motion should be **granted**, and Defendants Owens and Sittnick should be **dismissed** as named Defendants.

### D. Qualified immunity

Defendants aver that they are entitled to qualified immunity because Plaintiff's claims against them do not reveal that their actions violated Plaintiff's clearly established constitutional rights.

Qualified immunity protects a government official performing discretionary functions from suit in his individual capacity, so long as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope

19

v. Pelzer, 536 U.S. 730, 739 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). A government official acts within his discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

Accepting Plaintiff's allegations as true, he arguably sets forth a claim that Defendants were deliberately indifferent to his serious medical needs. At the time giving rise to Plaintiff's allegations, it was clearly established that prison officials with subjective knowledge of an inmate's serious medical needs could not respond in an objectively unreasonable manner. This portion of Defendants' Motion should be **denied**.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion be **GRANTED** in part and **DENIED** in part. Plaintiff's claims against Defendant Edwards and his failure to protect claims should be **DISMISSED**, without prejudice, because

AO 72A
(Rev. 8/82)

Plaintiff failed to exhaust his administrative remedies. Plaintiff's deliberate indifference claims against Defendants Owens and Sittnick should be **DISMISSED**. Only Plaintiff's deliberate indifference claims against Defendants Moore, Ferra, and Hart should remain pending.

**SO REPORTED** and **RECOMMENDED**, this _16th_ day of December, 2014.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)