# In the United States District Court
## For the Southern District Of Georgia
### Waycross Division

CLEVELAND D. DUNN,

      Plaintiff,

v.

DARRELL HART, Warden, Ware State
Prison, et al.,

      Defendants.

CIVIL ACTION NO.: 5:13-cv-131

## O R D E R

Presently before the Court is Warden Darrell Hart, ("Warden Hart"), Nurse Barbara J. Moore, ("Nurse Moore"), and Nurse Mary Gail Ferra's, ("Nurse Ferra"), Motion for Summary Judgment. (Dkt. No. 95.) Plaintiff filed a Response, (dkt. no. 140), and a Declaration in Opposition to Defendants' Motion for Summary Judgment, (dkt. no. 141). After careful consideration of the pleadings, and for the reasons that follow, the Court **GRANTS** Defendants' Motion.

### FACTUAL BACKGROUND

The facts presented here are drawn from the Parties' Statements of Material Fact. As it must, the Court views all of the evidence in the light most favorable to the Plaintiff and

draws all reasonable inferences in his favor.[1] *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000).

Plaintiff, who is currently confined at Dodge State Prison in Chester, Georgia, alleges that Defendants were deliberately indifferent to his serious medical needs when he was incarcerated at Ware State Prison in Waycross, Georgia. (Dkt. 140-1, p. 1.) Plaintiff, who had a history of medical conditions including congenital hydrocephalus, choanal atresia, and congenital facial abnormalities, suffered facial and head injuries after being attacked by another inmate with a broken mop handle on September 9, 2011 at Ware State Prison. (Dkt. No. 95-2, p. 1; Dkt. No. 140-1, p. 2.) Following Plaintiff's attack, Lieutenant Brian Adams found Plaintiff injured in his cell. (Dkt. No. 95-2, p. 5.) Lieutenant Adams also discovered a bloody towel in Plaintiff's cell. (*Id.*) Lieutenant Adams then

---

[1] Though Plaintiff has submitted a Response to Defendants' Motion for Summary Judgment, as well as a Declaration in Opposition to Defendants' Motion for Summary Judgment which contains a brief "Statement of Facts," (dkt. nos. 140, 141), Plaintiff's responses primarily assert new claims and reassert dismissed claims against dismissed defendants. The Eleventh Circuit has repeatedly held that a party cannot raise new claims at the summary judgment stage. *Ivey v. First Quality Retail Serv.*, 490 F. App'x 281, 287 (11th Cir. 2012) (though court liberally construes pleadings of *pro se* litigants, *pro se* plaintiff cannot raise new claims at summary judgment stage); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (new claim may not be raised in a response to defendant's summary judgment motion). Furthermore, Plaintiff may not resurrect previously dismissed claims or reassert claims against previously dismissed Defendants at this stage. Accordingly, the Court will consider Plaintiff's assertions only to the extent those assertions are responsive to Defendants' Motion for Summary Judgment.

AO 72A
(Rev. 8/82)

escorted Plaintiff to the prison's medical unit, where Nurse Moore examined Plaintiff's injuries. (Id. at p. 6.) During this examination, Nurse Moore took Plaintiff's vital signs and recorded her physical observations. She noted that Plaintiff's eyes, lips, and cheeks were swollen and that Plaintiff had a scratch under his left eye, blood on his clothing, and broken eye glasses. (Id.) When Nurse Moore inquired as to the source of Plaintiff's injuries, Plaintiff denied that he had been involved in an altercation and did not provide an explanation for his facial injury. (Id. at pp. 6-7; Dkt. No. 141-3, p. 2.) Nurse Moore cleaned Plaintiff's face, provided him ice for swelling, gave him ibuprofen for pain, and advised him to submit a sick call request if any further problems arose. (Dkt. No. 95-2, p. 7.)

Following his examination by Nurse Moore, Plaintiff was placed in administrative segregation, per prison protocol. (Id.) On the same day, Plaintiff completed the sick call request given to him by Nurse Moore, which Lieutenant Adams submitted to the medical unit on Plaintiff's behalf. (Id. at p. 8.) On September 15, 2011, pursuant to that sick call request, Dr. Phillip Grooms, M.D., a physician employed by the Georgia Department of Corrections at Ware State Prison during Plaintiff's incarceration at that facility, examined Plaintiff's injuries. (Dkt. No. 95-10, p. 3.) Dr. Grooms concluded that

Plaintiff did not require emergency medical care for his facial injuries and submitted a consult request for a facial CT scan. (Id. at p. 5.) Dr. Grooms opined that any facial fractures resulting from Plaintiff's September 9, 2011 attack were not at risk of healing improperly and, therefore, he ordered only a routine CT scan. (Id. at p. 6.)

Plaintiff alleges that Defendant Nurse Ferra also treated him on September 15, 2011. (Dkt. No. 95-12, p. 127.) Plaintiff contends that, at the time of Nurse Ferra's examination, he was bleeding from his head, his face appeared swollen and was "visibly sunk in," and that Nurse Ferra opined that Plaintiff had broken bones. (Id. at pp. 123-33.) However, Plaintiff contends that Nurse Ferra provided him no care, stating that she had no power to override Nurse Moore's findings. (Id. at p. 125.) Defendant Nurse Ferra denies having treated Plaintiff on this date.[2]

Plaintiff further alleges that, following Dr. Grooms' examination and the purported examination by Defendant Nurse Ferra on September 15, 2011, he spoke with Warden Hart in the segregation unit. (Id. at p. 109.) Plaintiff contends that, sometime between September 16 and 19, 2011, he told Warden Hart that he had been "jumped," that he was injured and lost

---

[2] Furthermore, Dr. Grooms did not observe that Plaintiff was bleeding or that Plaintiff's face was "caved in" or "sunken" during his examination on the same day. (Dkt. No. 95-2, p. 9.)

AO 72A
(Rev. 8/82)

consciousness after the attack, that he was scheduled to have brain surgery, and that he needed to go to the hospital. (Id. at pp. 109-11.) Plaintiff claims that Warden Hart responded that Plaintiff needed to see medical, that Warden Hart does not "do medical," and that Warden Hart then slammed the flap and left administrative segregation without addressing Plaintiff's medical needs. (Id. at pp. 110-13.) Shortly thereafter, on September 20, 2011, Plaintiff was transferred from Ware State Prison to Calhoun State Prison.

## PROCEDURAL BACKGROUND

Plaintiff, who was previously represented by counsel, filed this action on December 9, 2013. (Dkt. No. 1.) On May 29, 2014, Defendants filed a Motion to Dismiss, (dkt. no. 27). On August 11, 2014, this Court dismissed Plaintiff's claims against Lieutenant Adams, Georgia Correctional Health Care, and the Georgia Department of Corrections, among others. (Dkt. No. 45.) On March 9, 2015, the Court dismissed all of Plaintiff's remaining claims, with the exception of his deliberate indifference claims against Defendants Nurse Moore, Nurse Ferra, and Warden Hart. (Dkt. No. 78.)

On December 10, 2015, remaining Defendants Nurse Moore, Nurse Ferra, and Warden Hart filed a Motion for Summary Judgment, to which Plaintiff was ordered to file a response by January 3, 2016. (Dkt. No. 95.) After granting Plaintiff four

motions for extension of time in which to file his Response to Defendants' Summary Judgment, (dkt nos. 102, 105, 108, 112), Plaintiff moved to proceed *pro se* in this case and his counsel moved to withdraw, (dkt. nos. 117, 118). After the Court granted these motions, Plaintiff alleged that his former counsel refused to return his legal documents to him and that he was, therefore, unable to draft his Response to Defendants' Motion for Summary Judgment. Accordingly, on September 7, 2016, the Court Ordered that Plaintiff be provided an additional copy of Defendants' Motion for Summary Judgment and all supporting materials. (Dkt. No. 139.) Within that Order, the Court granted Plaintiff an additional extension of ten days—until September 17, 2016—to file a Response. (Id.)

Because September 17, 2016 fell on a Saturday, Plaintiff's Response was due on September 19, 2016. Fed. R. Civ. P. 6(a)(1)(C). The Court received Plaintiff's Response on September 23, 2016. However, pursuant to Federal Rule of Civil Procedure 6(d), "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)[.] Accordingly, to be considered timely, Plaintiff was required to file his Response by September 22, 2016. Because "the "prison mailbox rule," United States v. Glover, 686 F.3d 1203, 1205 (11th

Cir.2012), provides that a prisoner's pleading is considered "filed" on the date on which he signs it, and Plaintiff signed his Response and Declaration in Opposition on September 20, 2016, the Court will consider Plaintiff's Response and Declaration timely filed as of September 20, 2016.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there

AO 72A
(Rev. 8/82)

are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

Defendants move for summary judgment on two grounds. First, Defendants maintain Plaintiff cannot show that any Defendant violated his Eighth Amendment right against cruel and unusual punishment. In the alternative, Defendants assert that they are entitled to qualified immunity.

## I. Deliberate Indifference to Serious Medical Needs

Plaintiff's deliberate indifference claims and Defendants' arguments require analysis of the Eighth Amendment's proscription against cruel and unusual punishment. That

proscription imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099–1100 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). This right to safety is violated when a defendant shows a deliberate indifference to a substantial risk of serious harm. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828).

In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by

AO 72A
(Rev. 8/82)

showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]" Goebert, 510 F.3d at 1327. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no constitutional

violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Det. Center Staff, 262 F. App'x. 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

Defendants assert Plaintiff cannot sustain a cause of action against Defendant Nurse Moore, Defendant Nurse Ferra, or Defendant Warden Hart. Accordingly, the Court applies the summary judgment standards and Eighth Amendment deliberate indifference standards laid out above to Plaintiff's claims against each defendant.

## II. Defendant Nurse Moore

The parties do not dispute that Plaintiff had a serious medical need following his attack and, therefore, agree that Plaintiff has satisfied the objective component of his deliberate indifference claim. However, Defendants contend that Plaintiff has not satisfied the subjective component of his claim as to Nurse Moore, because she did not know of a serious risk of harm that she then disregarded. (Dkt. No. 95-1, p. 18.) Defendants further aver that, even if Nurse Moore knew of a serious risk of harm and disregarded that risk, her decision to treat Plaintiff with ibuprofen and an ice pack—as opposed to arranging for immediate emergency care, x-ray, and CT scans—was

at least minimally adequate under the Eighth Amendment. (Id. at pp. 14-15.) Similarly, Defendants aver that Nurse Moore did not improperly delay medical treatment by failing to order x-rays and CT scans of Plaintiff's face. (Id. at p. 16.) Finally, Defendants contend that Plaintiff has not shown that Nurse Moore's medical treatment caused Plaintiff's purportedly improperly healed fractures, hearing loss, or pain. (Id. at p. 17.)

In support of their arguments, Defendants offer the affidavits of Nurse Ferra, Warden Hart, Lieutenant Adams, Dr. Phillip Grooms, and Georgia Department of Corrections Health Services Administrator Vernon Speight, as well as Plaintiff's medical records. Those sources support the following facts: (1) Nurse Moore examined Plaintiff and asked for the cause of his visible facial injuries in the Ware State Prison medical unit on September 9, 2011; (2) Plaintiff refused to explain the cause of his injuries and denied that he had been involved in an inmate altercation; (3) Nurse Moore cleaned Plaintiff's face, provided him with ice, pain relief medication, and a sick call request form; (4) Nurse Moore instructed Plaintiff to submit the form if additional medical problems arose; and (5) Nurse Moore had no

AO 72A
(Rev. 8/82)

further involvement in the treatment of Plaintiff's facial injury. (Dkt. No. 95-2, pp. 6-7.)

Conversely, Plaintiff has alleged additional facts regarding his condition at the time Nurse Moore examined him to show that she not only knew of, but disregarded his serious medical need. First, Plaintiff contends that he was bleeding from his head, arm, mouth, and ear and had a sunken face when he arrived at the medical unit on September 9, 2011, and that he explained to Nurse Moore that he had been attacked by another inmate. He has also alleged that he was awaiting brain surgery at the time Nurse Moore examined him. He claims that he advised Nurse Moore of these conditions and that she responded to him rudely and sarcastically.

In his Declaration in Opposition to Defendants' Motion for Summary Judgment, Plaintiff further argues that Lieutenant Adams fabricated his incident report and that Nurse Moore placed an erroneous nursing assessment in his medical file to conceal Nurse Moore's provision of deficient medical care. (Dkt. No. 141, p. 4.) Plaintiff also alleges that his treating physician, Dr. Kauntakis, subsequently opined that Plaintiff had improperly healed broken bones in his face due to Nurse Moore's failure to order emergency care. (Dkt. No. 141, p. 7.) Finally, Plaintiff argues that his subsequent need for facial reconstructive surgery and oral surgery following the attack shows that he

AO 72A
(Rev. 8/82)

appeared severely injured when he presented to Nurse Moore on September 9, 2011 and that she, therefore, must have known he had a serious medical need.

However, Plaintiff has offered no evidence in support of his allegations that Lieutenant Adams and Nurse Moore falsified their records, other than his own testimony. Furthermore, Plaintiff's medical records contradict his assertion that his treating physician, Dr. Kauntakis, offered any opinion as to whether Plaintiff had improperly healed broken bones or opined as to the cause of Plaintiff's injuries. Though Plaintiff claims that his medical records labeled "Exhibit C" and "Exhibit E" contain this opinion, (dkt. no. 141, p. 7), those records contain no such conclusion by Dr. Kauntakis.

In contrast, Defendants offer the affidavit of Lieutenant Adams, who denies that Plaintiff was bleeding when he escorted Plaintiff to the medical unit on September 9, 2011. (Dkt. No. 95-8, p. 2.) Plaintiff's medical records also fail to indicate that Plaintiff was bleeding at the time of Nurse Moore's examination or that his face had a sunken appearance.[3] (Dkt. No. 95-4, p. 134.) The medical records also contradict Plaintiff's allegation that he was scheduled for brain surgery

---

[3] Plaintiff's medical records do indicate that his clothing was bloody and he had swollen eyes, lips, and cheeks, a scratch below his left eye, and broken eye glasses. However, nothing in Plaintiff's medical records indicates that he was actively bleeding during his examination by Nurse Moore. (Dkt. No. 95-11.)

at the time of his examination by Nurse Moore or that Nurse Moore knew of any impending operations.

Accordingly, even when viewing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff fails to establish a genuine dispute as to whether Nurse Moore was subjectively aware of a serious risk to his health and disregarded that risk. While Plaintiff avers that Nurse Moore saw that he was bleeding and had a sunken face, knew Plaintiff was scheduled for brain surgery, and that Nurse Moore, Lieutenant Adams, and various other prison officials have conspired to falsify his medical records, the record evidence directly contradicts Plaintiff's unsupported assertions of fact. The record shows that Plaintiff presented to Nurse Moore with facial injuries, but he refused to explain the origin of those injuries. (Dkt. No. 141-3, p. 2.) Plaintiff's medical records and Defendants' witness declarations further show that Plaintiff was not bleeding at the time Nurse Moore treated him and that he did not have a sunken face. The record also confirms that Plaintiff was not scheduled for brain surgery or any other neurological specialty appointments, as he claims. Accordingly, there is no genuine dispute that Nurse Moore was not aware of any serious risk to Plaintiff on September 9, 2011, as neither Plaintiff nor his medical records indicated that the swelling

AO 72A
(Rev. 8/82)

and scratches on his face were more serious than they appeared at the time of his examination.

Furthermore, even when viewing the evidence in a light most favorable to Plaintiff, he has not shown that Nurse Moore's provision of only ibuprofen and ice to treat his injuries was constitutionally inadequate.  As discussed above,"[w]hen the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'"  Blanchard v. White Co. Det. Center Staff, 262 F. App'x. 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504).  Even assuming Nurse Moore's decision to treat Plaintiff's injury with ice and ibuprofen rather than ordering immediate emergency care and CT scans or x-rays was so poor as to amount to medical malpractice, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106. See also, Pate v. Peel, 256 F. Supp. 2d 1326, 1327 (N.D. Fla. 2003), (citing Harris, 941 F.2d at 1505) (a purely medical judgment "that in hindsight . . . may have been poor or even that it may have constituted negligence or medical malpractice does not elevate Plaintiff's claim to a tort of constitutional dimensions.").

Here, it is undisputed that Nurse Moore cleaned Plaintiff's wounds, provided him with ibuprofen and ice, and gave him a sick

AO 72A
(Rev. 8/82)

call request.  However, Plaintiff claims that the care provided by Nurse Moore was constitutionally inadequate because his physical condition necessitated emergency care, as well as x-rays and CT scans.  Contrary to Plaintiff's contentions, however, the evidence shows that Plaintiff was not bleeding when he presented to Nurse Moore, that he exhibited only scratches and swelling, and that Plaintiff refused to explain the source of his injuries to Nurse Moore.  Under these circumstances, Nurse Moore's provision of ibuprofen and ice was at least minimally adequate.  See Chatman v. Adcock, 334 F. App'x 281, 290 (11th Cir. 2009) (finding that prison nurse's provision of ibuprofen following prisoner's attack by fellow inmate with broom handle did not violate Eighth Amendment, despite fact that Plaintiff had previously been prescribed stronger medication for pain relief).

Furthermore, the question of whether an inmate should have received different diagnostic tests or treatments is not an appropriate basis for constitutional liability.  See, e.g., Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995).  The United States Supreme Court has held that

> [T]he question whether an x-ray – or additional
> diagnostic techniques or forms of treatment – is
> indicated is a classic example of a matter for medical
> judgment.  A medical decision not to order an X-ray,
> or like measures, does not represent cruel and unusual

AO 72A
(Rev. 8/82)

punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .

Estelle, 429 U.S. at 107. This precedent squarely forecloses Plaintiff's argument that Nurse Moore's treatment of his injuries was constitutionally deficient.

Accordingly, Defendants have shown that, even when viewed in a light most favorable to Plaintiff, the record evidence does not support Plaintiff's claim that Nurse Moore was deliberately indifferent to Plaintiff's serious medical needs. As a result, no reasonable jury could return a verdict for Plaintiff against Nurse Moore. Therefore, the Court **GRANTS** Defendant Nurse Moore summary judgment on Plaintiff's deliberate indifference claims.

## III. Defendant Nurse Ferra

Defendants also argue that Plaintiff cannot sustain a deliberate indifference claim against Defendant Nurse Ferra. Specifically, Defendants maintain that Nurse Ferra had no subjective knowledge of a risk of serious harm to Plaintiff as a result of his facial injuries because Plaintiff never presented to Nurse Ferra for treatment. Conversely, Plaintiff alleges that Nurse Ferra examined him on September 15, 2011, and, therefore, she knew of, but deliberately ignored, a risk of serious harm to his health by failing to provide any treatment.

In support of their argument that Nurse Ferra had no knowledge of a serious risk to Plaintiff's health, Defendants

point to Plaintiff's medical records.  The last record of
Plaintiff's treatment by Nurse Ferra is dated August 10, 2011.
(Dkt. No. 95-2, p. 12.)  Again, Plaintiff's attack at the hands
of another inmate occurred on September 9, 2011.  Accordingly,
Defendants maintain that Nurse Ferra never treated Plaintiff's
injuries not because she was deliberately indifferent to his
serious medical needs, but because she never knew that he had a
serious medical need.  (Id. at p. 15.)

In his Declaration in Opposition to Defendants' Motion for
Summary Judgment, Plaintiff again avers that Nurse Ferra
examined him on September 15, 2011, contrary to Defendants'
allegations.  (Dkt. No. 141, p. 12.)  Defendant claims that
Nurse Ferra not only examined him but "was visibly upset" after
viewing his injuries.  (Id. at p. 15.)

As discussed above, when the nonmoving party would have the
burden of proof at trial, the parties moving for summary
judgment may discharge their burden by showing that the record
lacks evidence to support the nonmoving party's case or that the
nonmoving party would be unable to prove his case at trial.  See
Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (citing
Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)).  Further, the
Eleventh Circuit has held where a plaintiff only submits a
"conclusory allegation, unsupported by any physical evidence,
medical records, or corroborating testimony of witnesses . . .

AO 72A
(Rev. 8/82)

[the court] discount[s] it", and it is insufficient to defeat a motion for summary judgment. Bennett v. Parker, 898 F.2d 1530, 1533-34 (11th Cir.1990). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380(2007).

Here, Plaintiff bears the burden of proving that Nurse Ferra was deliberately indifferent to his serious medical needs. However, Plaintiff's medical records unequivocally indicate that Plaintiff never presented to Nurse Ferra for treatment of his September 9, 2011 injuries. Plaintiff has provided no evidence to the contrary other than his own unsupported and conclusory allegations which are insufficient to defeat a summary judgment motion. Even if Plaintiff's allegations could be considered evidence, the record so blatantly contradicts the allegations that no reasonable jury could believe Plaintiff's account. Consequently, there is no genuine dispute as to whether Nurse Ferra examined Plaintiff on September 15, 2011.

Moreover, even if Nurse Ferra had seen Plaintiff on September 15, 2011, it is undisputed that Dr. Grooms, M.D., a physician employed by the Georgia Department of Corrections at Ware State Prison, examined and treated Plaintiff on that date.

AO 72A
(Rev. 8/82)

Plaintiff cannot establish that Nurse Ferra violated the Constitution by deferring to Dr. Grooms' course of treatment for Plaintiff. See Bauer v. Kramer, 424 F. App'x 917, 919 (11th Cir. 2011)("[A] nurse is not deliberately indifferent when she reasonably follows a doctor's orders by administering prescribed medication to an inmate."); Billue v. Gualtieri, No. 8:13-CV-546-T-30TGW, 2013 WL 1405945, at *4 (M.D. Fla. Apr. 8, 2013) ("A nurse is not deliberately indifferent when he/she reasonably follows a doctor's orders.").

For all of these reasons, Plaintiff would not be able prove his deliberate indifference claims against Nurse Ferra at trial. Therefore, the Court **GRANTS** Nurse Ferra summary judgment on Plaintiff's deliberate indifference claims.

## IV. Defendant Warden Hart

Finally, Plaintiff claims that Defendant Hart was also deliberately indifferent to his serious medical needs. Plaintiff alleges that, following his examination by Dr. Grooms on September 15, 2011, Plaintiff told Warden Hart that he needed medical attention during Warden Hart's inspection of the administrative segregation housing unit. (Dkt. No. 95-12, p. 108.) According to Plaintiff, Warden Hart advised Plaintiff to seek help in the medical unit, but did nothing to assist Plaintiff in attaining medical care.

AO 72A
(Rev. 8/82)

In response to Plaintiff's allegations, Defendants first argue that Warden Hart could not have been aware of a serious medical need, because, following his treatment by Dr. Grooms, Plaintiff no longer had a serious medical need when Defendant Hart spoke with him. (Dkt. No. 95-1, pp. 21-22.) In the alternative, Defendants argue that, even if Plaintiff had a serious medical need of which Warden Hart was aware, he was not deliberately indifferent to that need because Defendant Hart "would have notified [Ware State Prison's] medical staff and relied upon them to provide any needed care[]" in the event Plaintiff had a serious medical need. (Id. at p. 22.) In his Response and Declaration in Opposition to Defendants' Motion for Summary Judgment, Plaintiff reasserts the allegations he presented in his Complaint—that Defendant Warden Hart came to his cell during an inspection of the segregation unit, opened Plaintiff's window flap, saw that Plaintiff was injured, and suggested he seek assistance from the prison's medical staff. (Dkt. No. 141, pp. 15-16.) Aside from his own testimony, Plaintiff offers no other evidence that Warden Hart knew of or witnessed his injuries.

As an initial matter, Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't

AO 72A
(Rev. 8/82)

Sec., 133 F.3d 797, 801 (11th Cir. 1998). Thus, Defendant
Warden Hart may be liable only through personal participation in
the alleged constitutional violation or if there is a causal
connection between his conduct and the alleged violations. Id.
at 802. "To state a claim against a supervisory defendant, the
plaintiff must allege (1) the supervisor's personal involvement
in the violation of his constitutional rights, (2) the existence
of a custom or policy that resulted in deliberate indifference
to the plaintiff's constitutional rights, (3) facts supporting
an inference that the supervisor directed the unlawful action or
knowingly failed to prevent it, or (4) a history of widespread
abuse that put the supervisor on notice of an alleged
deprivation that he then failed to correct." Barr v. Gee, 437
F. App'x 865, 875 (11th Cir. 2011).

Plaintiff does not allege, much less present evidence, that
his allegedly deficient medical care resulted from a custom or
policy created or endorsed by Defendant Warden Hart. Likewise,
Plaintiff offers no argument or evidence that there was a
widespread history of abuse at Ware State Prison that placed
Defendant Hart on notice that he needed to address the level of
medical care at the prison. Additionally, the record contains
no evidence that Warden Hart directed other actors to refrain
from providing Plaintiff medical care or that Warden Hart
otherwise prevented others from providing Plaintiff with

AO 72A
(Rev. 8/82)

adequate medical care.[4]  Thus, it appears that Plaintiff argues that Warden Hart was personally involved in the violation of Plaintiff's constitutional rights.

"[T]he law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so." Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010).  "[I]n the absence of a reason to believe, or actual knowledge, that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference[.]"  Kelly v. Ambroski, 97 F. Supp. 3d 1320, 1343 (N.D. Ala. 2015).  Furthermore, it "is widely held that non-medical prison personnel are generally entitled to rely on the expertise of the [prison's] medical staff and are not required to second-guess the medical staff's judgment regarding an inmate's care."  Stallworth v. Graham, No. 4:14-CV-00134-RDP, 2015 WL 4756348, at *5 (N.D. Ala. Aug. 11, 2015) (citing Johnson v. Doughty, 433 F.3d 1001, 1011 (7th Cir. 2006)).

---

[4]  Moreover, as laid out above, Plaintiff has not offered any evidence that any other defendant was deliberately indifferent to Plaintiff's medical needs.  Consequently, Defendant Hart cannot be said to have directed or failed to prevent another defendant's deliberate indifference.

AO 72A
(Rev. 8/82)

The record shows that Warden Hart had no medical training, did not make any medical determinations or judgments regarding inmates, and did not substitute his judgment for that of the prison's medical professionals. (Dkt. No. 95-7, p. 4.) Rather, Warden Hart relied on trained medical personnel to provide treatment to those inmates in need and to provide necessary information about an inmate's condition and needs. (Id.) Medical personnel performed rounds in the segregation units at Ware State Prison at least three times per week to check on the medical status of all inmates, including the days in which Plaintiff was confined in the administrative segregation unit.[5] (Dkt. No. 95-2, p. 14.)

Plaintiff alleges that Defendant Hart was aware of his serious medical needs because Plaintiff told him of those needs. However, the uncontroverted evidence before the Court reveals that Warden Hart told Plaintiff to see the medical department regarding his medical needs. Indeed, the undisputed facts reveal that Plaintiff saw Dr. Grooms and others in the medical department in the days before he spoke to Warden Hart, and he continued to see the medical department after speaking to Warden Hart.

---

[5] Plaintiff contends that medical staff members falsified their records to indicate that they made rounds on the dates in which he was confined in segregation. (Dkt. No. 141, p. 15.) However, this contention is immaterial to Plaintiff's claims, as he does not allege that Warden Hart knew of, directed, or condoned any such practice, much less present any evidence that such practices occurred.

Warden Hart had no medical training or expertise and properly relied on medical personnel to provide care and treatment to any inmate with a medical need. As far as Defendant Hart was aware, Plaintiff was receiving proper care and treatment from the medical staff at Ware State Prison. In short, Plaintiff fails to create a genuine issue of any fact material to his deliberate indifference to serious medical needs claims against Warden Hart. Accordingly, the Court also **GRANTS** Defendant Hart summary judgment on Plaintiff's deliberate indifference claims.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment, (dkt. no. 95), is **GRANTED**. The Court **GRANTS** summary judgment in favor of Defendants on all of Plaintiff's remaining claims. The Clerk of Court is **DIRECTED** to enter the appropriate judgment of dismissal and to **CLOSE** this case.

SO **ORDERED**, this 25 day of September , 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)